UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

**FILED**

**MAR 3 0 2012**

CLERK

| | | |
|---|---|---|
| SANDRA HOY, | * | CIV 10-3021-RAL |
| | * | |
| Plaintiff, | * | |
| | * | OPINION AND ORDER |
| vs. | * | GRANTING IN PART |
| | * | AND DENYING IN PART |
| COUNTRY PRIDE COOPERATIVE, | * | DEFENDANT'S MOTION FOR |
| INC., | * | SUMMARY JUDGMENT |
| | * | |
| Defendant. | * | |

Plaintiff Sandra Hoy ("Hoy") sued Defendant Country Pride Cooperative, Inc. ("Country Pride"), alleging that Country Pride violated the Americans with Disabilities Act ("ADA") with regard to Hoy's employment. Country Pride filed a Motion for Summary Judgment, Doc. 14, which Hoy resisted.

## I. Undisputed Material Facts

Hoy worked at Platte Cooperative Association ("Platte Cooperative") in Platte, South Dakota, as a bookkeeper/secretary from November of 1974 until sometime in 2007.[1]  Doc. 16 at ¶ 1; Doc. 24 at ¶ 1. Hoy has suffered with rheumatoid arthritis since childhood, began having

---

[1]  Under Rule 56 of the Federal Rules of Civil Procedure, this Court at this stage of the case must resolve all genuine disputes of material fact in favor of Hoy as the non-moving party. As will become apparent later in this Opinion, there is a significant dispute of fact over whether Hoy ever worked for Country Pride, or somehow was continued as an employee of Platte Cooperative Association after that entity was merged into Country Pride and apparently ceased operations. In Plaintiff's Responsive Statement of Material Facts, Plaintiff admits to being a bookkeeper/secretary for Platte Cooperative "from November 1974 to December 31, 2007." Doc. 24 at ¶ 1. However, throughout the remainder of Hoy's material resisting summary judgment, she clearly puts at issue whether she was working for Country Pride or Platte Cooperative after the merger and apparent cessation of operations of Platte Cooperative in September of 2007. See Doc. 24 at ¶¶ 47, 48, 50, 51, 53, 54, 57, 61, 62, 71; Doc. 23; Doc. 27.

significant problems with how this autoimmune disease affected her hip by age 17 or 18, had a total hip replacement at age 18, and has undergone joint replacement in both her knees and her shoulders. Doc. 23 at ¶¶ 2-3. Over the years, Hoy has had all the joints removed from her toes, has had her right knee joint completely removed, and had her left hip joint replaced with a bar. Id. at ¶¶ 3-4. During part of her employment with Platte Cooperative, Hoy used a walker to ambulate. By 2005, Hoy was using a wheelchair for mobility. Id. at ¶ 5. Hoy has lived essentially her entire life in the town of Platte, living in recent years in a home with her friend Ron Sternburg, who assists her with many of her daily activities of living. Id. at ¶¶ 1, 9.

Hoy worked for approximately 33 years at Platte Cooperative. For much of the time, including all times relevant to resolution of the Motion for Summary Judgment, Platte Cooperative had just three other full-time employees—general manager Gene Gukeisen and laborers/delivery men Vernon League and Mike Schoenrock. Doc. 16 at ¶¶ 1, 3; Doc. 24 at ¶¶ 1, 3. Platte Cooperative was in the business of serving its cooperative members with propane, fuel oil, gas, and diesel sales and delivery; tire service; and feed and farm products sales and delivery. Doc. 16 at ¶ 2; Doc. 24 at ¶ 2. Gukeisen, League, and Schoenrock delivered fuel, feed and farm products, and fixed tires. Doc. 16 ¶ 3; Doc. 24 at ¶ 3. Hoy did bookkeeping and secretarial functions, including answering the phone, cleaning until her physical condition no longer permitted her to do so, turning on fuel pumps for customers, payroll, and handling mail and bank deposits, among other things. Doc. 16 at ¶ 5; Doc. 24 at ¶ 5.

Hoy's rheumatoid arthritis had progressively limited her ability to walk, stand, carry, lift, and perform certain work. Doc. 16 at ¶ 6; Doc. 24 at ¶ 6; Doc. 23 at ¶¶ 2-6. After Hoy became wheelchair dependent, Platte Cooperative hired Vicky Kimball to clean once a week. Doc. 23

2

at ¶ 15. Hoy sometimes relied on her friend Ron Sternburg, who was not an employee of Platte Cooperative, to assist her in performing some of her job functions, such as driving her to Platte Cooperative's bank and the post office, turning on a fuel pump switch at Platte Cooperative which Hoy could not reach from her wheelchair, and assisting her in transfers to and from her wheelchair and the Platte Cooperative toilet which was at a standard height. Doc. 23 at ¶¶ 37-39.

In November of 2006, the Board of Directors of Platte Cooperative passed a motion to recommend that Hoy "take her retirement" because "there needed to be a change in the secretarial position." Doc. 23 at ¶ 22. Platte Cooperative gave various reasons for the vote, including Hoy's lack of productivity, Hoy's declining ability to perform work, and Hoy's reportedly souring attitude. Doc. 16 at ¶¶ 9, 11; Doc. 23 at ¶ 25. Platte Cooperative let Hoy know that they wanted her to quit her job and take early retirement, or else they would fire her. Doc. 23 at ¶ 26.

After being told of the Platte Cooperative Board decision that she should retire or risk being fired, Hoy called the South Dakota Department of Labor. Id. at ¶ 30. In December of 2006, Hoy left a note for the Platte Cooperative Board advising that she had approached the Department of Labor about her rights and that she did not intend to resign. Doc. 16 at ¶ 12; Doc. 24 at ¶ 12. The Platte Cooperative Board sought legal advice, and the attorney for Platte Cooperative wrote to Sternburg telling him to cease and desist from "taking any action at the Co-op that should be handled by Co-op employees," or risk being barred from the premises. Doc. 23 at ¶ 35. The Platte Cooperative Board then wrote to Hoy, acknowledged that she had turned down early retirement, and identified inadequacies in her performance of her job duties. Id. at ¶ 40. The Platte Cooperative Board, for the first time in its history with respect to any employee, listed the essential functions of Hoy's job: greeting customers, turning on the gas pump, writing

3

out tickets for customers, assisting customers who are purchasing products, running deposits and other errands to the bank, running mail to and from the post office, running errands for the office, bookkeeping, cleaning the office, doing inventory of the store, answering phones, and payroll. Doc. 23 at ¶ 41; Doc. 16 at ¶ 16; Doc. 24 at ¶ 16.  The Platte Cooperative Board advised Hoy of customer complaints, taking too much overtime, and failing to do such things as inventory and cleaning.  Doc. 16 at ¶ 17; Doc. 24 at ¶ 17.  Hoy had not been able to perform inventory and cleaning for a number of months and had allowed her friend and at times customers to turn on the gas pump and assist in certain tasks.  Doc. 16 at ¶ 20; Doc. 24 at ¶ 20.  The Board directed Hoy to discontinue from having non-employees assist her with such job duties.  Doc. 16 at ¶ 18; Doc. 24 at ¶ 18.

On January 15, 2007, Hoy met with the Platte Cooperative Board to discuss her request for accommodations in her job. Hoy, whose rheumatoid arthritis affects her dexterity, requested a computer update to reduce times when she has to hand-write tickets, a change in inventory practice, installation of an intercom for her to call for help to the employees in a backroom, moving the fuel pump switch to be within reach of her when she was in a wheelchair, moving a bookshelf to a lower position, and installing a wheelchair-accessible toilet. Doc. 23 at ¶ 44. The Platte Cooperative Board initially agreed to many of these accommodations, but ultimately did not make them, in part because of financial reasons and in part because it then decided to merge with another entity and discontinue operations. Doc. 23 at ¶¶ 45, 49. Platte Cooperative restructured the jobs of the three other employees, so that Hoy would not be left alone at Platte Cooperative and would have another employee available to help her. Doc. 16 at ¶ 29; Doc. 24 at ¶ 29.

4

In 2006 and 2007, Platte Cooperative's financial situation was so perilous that it questioned whether it could continue business beyond 2007. Doc. 16 at ¶ 32; Doc. 24 at ¶ 32. Carl Dickinson, the general manager of Country Pride, approached Gene Gukeisen, the general manager of Platte Cooperative, regarding a possible merger. Doc. 16 at ¶ 33; Doc. 24 at ¶ 33. Country Pride is a business based out of Winner, South Dakota, which has 13 locations in South Dakota, providing services and products similar to that of Platte Cooperative. Doc. 16 at ¶ 34; Doc. 24 at ¶ 34. Dickinson met with the Platte Cooperative Board on February 22, 2007, regarding a possible merger. Doc. 16 at ¶ 33; Doc. 24 at ¶ 33. In June of 2007, the Platte Cooperative Board passed a resolution to proceed with a merger with Country Pride. Doc. 16 at ¶ 35; Doc. 24 at ¶ 35. The terms of the merger were reduced to a written Unification Agreement dated July 27, 2007. Doc. 17-19; Doc. 23 at ¶ 54. The voting patrons of the Platte Cooperative approved the merger in August of 2007. Doc. 16 at ¶ 36; Doc. 24 at ¶ 36.

The Unification Agreement called for a merger whereby substantially "all assets of Platte Cooperative become assets of Country Pride and Platte members become members of Country Pride." Doc. 17-19; Doc. 23 at ¶ 54. Under the Unification Agreement, Platte Cooperative was required to terminate the employment of all of its employees effective August 31, 2007. Doc. 17-19 at ¶ 9.g; Doc. 23 at ¶ 57; Doc. 16 at ¶ 40; Doc. 24 at ¶ 40. Country Pride thereafter was to provide all personnel necessary to complete winding up of Platte Cooperative's business. Doc. 17-19 at ¶ 14.c. The merger date initially was contemplated as being September 1, 2007, but was moved to October 1, 2007. Doc. 16 at ¶ 37; Doc. 24 at ¶ 37. As a result, Platte Cooperative terminated all of its employees effective September 30, 2007. Doc. 23 at ¶ 57; Doc. 16 at ¶ 40; Doc. 24 at ¶ 40.

5

All Platte Cooperative employees who wanted to be considered for employment with Country Pride had to apply for a job. Doc. 16 at ¶ 41; Doc. 24 at ¶ 41. Hoy applied for employment in "secretary/bookkeeping." Doc. 16 at ¶ 42; Doc. 24 at ¶ 42. Country Pride hired the other three full-time Platte Cooperative employees—Gene Gukeisen, Vernon League, and Mike Schoenrock. Doc. 16 at ¶ 43; Doc. 24 at ¶ 43. Country Pride, during the course of its negotiation of the Unification Agreement and merger with Platte Cooperative, learned that Hoy was in a wheelchair, that Hoy did not want to work part time, and that Hoy had threatened some type of litigation. Doc. 23 at ¶ 56; Doc. 25-21 at p. 6-7 of 21. Country Pride did not want to hire Hoy as a permanent employee. Country Pride general manager Dickinson and Platte Cooperative's manager Gukeisen met with Hoy shortly before the merger. During the meeting, Dickinson told Hoy that she would not have a job with Country Pride. As had been authorized by Dickinson, Gukeisen, according to Hoy, then told Hoy that she could continue to work—ostensibly for Platte Cooperative—until the end of the year, at which time she could get her retirement and perhaps could go on Social Security Disability Insurance ("SSDI"). Doc. 23 at ¶¶ 74-75. Dickinson acknowledged that Country Pride came up with this idea in part because Country Pride wanted Hoy to help wind down the business of Platte Cooperative and in part because "Country Pride did not want to open itself up to anymore liability than we had to." Doc. 23 at ¶ 77. Country Pride claims that it did not hire Hoy because no position existed in Platte for a secretary/bookkeeper, but Hoy did continue to work in Platte at the Country Pride location through December 31, 2007. See Doc. 16 at ¶¶ 1, 44.

Platte Cooperative appears to have dissolved as of the date of the merger. Doc. 23 at ¶ 61; see Doc. 17-19 at ¶¶ 9.g, 13, 14.c. As a result, Platte Cooperative apparently ceased to exist

6

on October 1, 2007.[2] Id. Country Pride took over the Platte Cooperative store on October 1, 2007. Hoy continued at this new Country Pride store in Platte doing book work to convert Platte Cooperative records to Country Pride records, paying remaining Platte Cooperative debts, answering the phone and taking orders from customers for Country Pride, and filling out tickets for Country Pride customers. Doc. 16 at ¶¶ 47, 50; Doc. 24 at ¶¶ 47, 50; Doc. 80. After the merger, Country Pride planned to and did do the bulk of the bookkeeping for the Country Pride store in Platte at its headquarters in Winner. Hoy did the payroll for herself, paid Platte Cooperative bills and taxes, and used a Platte Cooperative checking account for these purposes. Doc. 16 at ¶¶ 47-48; Doc. 24 at ¶¶ 47-48. Hoy was the only employee paid from the Platte Cooperative account following the merger. Doc. 16 at ¶ 54; Doc. 24 at ¶ 54. Consistent with what she had been told, Hoy testified during her deposition that she was not a Country Pride employee during this time, but worked for Platte Cooperative. Doc. 16 at ¶ 59; Doc. 24 at ¶ 59.

On October 25, 2007, Hoy applied for SSDI benefits advising the Social Security Administration that she was totally disabled as of October 7, 2007. Doc. 16 at ¶ 68; Doc. 24 at ¶ 68. Hoy's physician opined that she was one-hundred percent disabled because she was in a wheelchair and had difficulty with transfers. Doc. 16 at ¶ 69; Doc. 24 at ¶ 69. The Social Security Administration determined Hoy to be disabled as of November 30, 2007, and the award of benefits began on June 25, 2008. Doc. 16 at ¶ 70; Doc. 24 at ¶ 70. Hoy herself testified that

---

[2] The website of the Secretary of State of the State of South Dakota shows that Platte Cooperative last filed an annual statement in January of 2007 and has been administratively dissolved by the Secretary of State for failure to file an annual statement. South Dakota Secretary of State, http://sdsos.gov/business/Documents.aspx?cid=cooo0154 (last visited March 29, 2012).

by December 31, 2007, she was totally disabled and could not lift, stand, or carry. Doc. 16 at ¶ 71; Doc. 24 at ¶ 71. Hoy's last day of work was December 31, 2007.

Country Pride maintains that it did not initially intend to hire a clerk for the Platte location. Toward the end of 2007, the manager of the Country Pride location in Platte was requesting the hiring of a clerk, so that he could do more work off site. Doc. 23 at ¶¶ 99-100. At Dickinson's request, the manager drafted a written job description, something Country Pride had not previously done for a clerk position. Doc. 23 at ¶¶ 101-102. The job description contained certain physical requirements—lifting up to 70 pounds, tire repair, and driving a feed truck and forklift—that ultimately were not part of the clerk's job and that Hoy believes were drafted intentionally to exclude her from being qualified for such a job. Doc. 23 at ¶¶ 103-106. The job description also included cleaning, stocking shelves, entering tickets, waiting on customers, and reconciling daily bank statements, but did not include paying bills or handling payroll. Doc. 16 at ¶¶ 74-75; Doc. 24 at ¶¶ 74-75. This clerk job was to be a part-time job and was posted at Country Pride in Platte. Doc. 16 at ¶ 76; Doc. 24 at ¶ 76. Hoy claims that she did not see the posting. Hoy, some months previously, had applied for a secretarial and bookkeeping position, but the clerk job description listed different job duties, some of which were outside of Hoy's physical abilities. When no one applied for the clerk position, the manager of Country Pride in Platte asked Vicky Kimball, the same person who had worked in cleaning and occasionally to substitute for Hoy, to apply. Kimball was hired in February of 2008 to fill the new position. Doc. 16 at ¶ 82; Doc. 24 at ¶ 82. Kimball did not help with tire repair, operate a forklift, lift up to 70 pounds, or drive a feed truck, which were some of the duties listed in the

job description, but she did wait on customers, clean, greet customers, stock shelves, and enter tickets. Doc. 16 at ¶¶ 74, 82; Doc. 24 at ¶¶ 74, 82.

Kimball left the clerk job in or before June of 2008. At that time, Country Pride advertised for a clerk position, but Hoy did not apply. Country Pride hired Suzanne Barbee in June of 2008. Barbee cleaned, waited on customers, loaded oil and feed, and fixed tires. Doc. 16 at ¶ 85; Doc. 24 at ¶ 85. The clerk job opened up again in February of 2010, and Hoy again did not apply for it. Hoy has not applied for a single job with any employer since her application to Country Pride in the Fall of 2007. Doc. 16 at ¶ 87; Doc. 24 at ¶ 87.

On May 22, 2008, Hoy filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Doc. 16 at ¶ 96; Doc. 24 at ¶ 96. Hoy did not raise in her charge of discrimination any complaint about a lack of accommodations in her employment, nor did she ever amend her charge to assert claims about a lack of accommodations. Doc. 16 at ¶ 98; Doc. 24 at ¶ 98. The EEOC neither addressed nor made any determination regarding an issue of lack of accommodations. Doc. 16 at ¶ 101; Doc. 24 at ¶ 101. The EEOC determined that there was reasonable cause to believe that Hoy had been discriminated against when Country Pride did not offer her continued employment. Doc. 16 at ¶ 100; Doc. 24 at ¶ 100.

## II. Discussion

### A. Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is not "a disfavored procedural shortcut, but rather . . . an integral part of the Federal Rules as a whole, which are designed 'to

secure the just, speedy, and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Rule 1 of the Federal Rules of Civil Procedure). On summary judgment, courts view "the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party." E.E.O.C. v. CRST Van Expedited, Inc., 2012 WL 555510, at *20 (8th Cir. Feb. 22, 2012). A party opposing a properly made and supported motion for summary judgment must cite to particular materials in the record supporting the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012).

**B. Country Pride as a Defendant**

Country Pride argues that Hoy never was employed with Country Pride and thus has no viable claim against Country Pride. Doc. 15 at 6-9. According to Country Pride, Hoy remained employed with Platte Cooperative after the merger from October 1 through December 31, 2007. There is no doubt that Country Pride wanted to distance itself from employing Hoy. The irony of Country Pride's position is, however, Platte Cooperative apparently was merged into Country Pride and thus apparently ceased to exist after the October 1, 2007 merger.[3] See Doc. 17-19.

Equally ironic, the best evidence that Hoy may not have been a Country Pride employee comes from Hoy who testified during her deposition:

> Q.   You knew that you were not a Country Pride employee, did you not?
> A.   Yes.

---

[3] Under South Dakota law, SDCL § 47-18-3, "After the effective date of a merger or consolidation, the cooperatives which are parties to the plan become a single cooperative . . . [t]he separate existence of all cooperatives which are parties to the plan, except the surviving or new cooperative, then ceases."

Doc. 17-1 at p. 60 of 78. Country Pride invokes the familiar axiom from South Dakota state court that a party opposing summary judgment cannot "assert a better version of the facts than [her] prior testimony and 'cannot now claim a material issue of fact which assumes a conclusion contrary to [her] own testimony.'" Vaughn v. John Morrell & Co., 2000 S.D. 31, ¶ 36, 606 N.W.2d 919, 926 (quoting Loewen v. Hyman Freightways, Inc., 1997 S.D. 2, ¶ 16, 557 N.W.2d 764, 768).

This Court would have no hesitation in applying this principle when a party is testifying under oath about a subject that the party knows as a matter of fact or when judicial estoppel would prevent a party from later taking an opposite or contrary legal position.[4] However, there are several reasons why this principle of South Dakota law does not conclusively establish Hoy to have never been in actuality an employee of Country Pride. First, the principle that a party opposing summary judgment cannot "assert a better version of the facts than [her] prior

---

[4] Hoy's inconsistent positions do not rise to the level of invoking judicial estoppel to prevent her from now claiming she was a Country Pride employee. In considering whether to apply the doctrine of judicial estoppel, this Court must look to three factors:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

Stallings v. Hussmann Corp., 447 F.3d 1041, 1047 (8th Cir. 2006) (quoting New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001)). Here, Hoy's statement that she was employed with Platte Cooperative after the merger has not been adopted by any prior court, presents little risk of inconsistent court determinations, and does not result in an unfair advantage to her or unfair detriment to Country Pride if there is no judicial estoppel.

testimony" is a procedural, not substantive, rule of law, and thus is not binding on a federal court. See Sayre v. Musicland Group, Inc., a Subsidiary of Am. Can Co., 850 F.2d 350, 353 (8th Cir. 1988) ("Reference to state law can be helpful, but it is certainly not required when a federal court decides a purely procedural question.") Second, the claims in this case are governed by a federal statute—the ADA—rather than by state law as in a diversity jurisdiction case. See 19 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4520 (2d. ed. 2011) ("[T]he choice of applicable law turns upon the source of the right or issue being adjudicated."). Third, this principle ought not to apply when a party is testifying to an understanding of a situation gained from other individuals or to a conclusion that appears to be contrary to the facts. In this case, there is no doubt that the general managers of Country Pride and Platte Cooperative attempted to create an arrangement where Hoy would remain employed with Platte Cooperative, even after Platte Cooperative apparently stopped to exist as a separate legal entity. See Doc. 17-19 at ¶¶ 1, 9.g, 13, 14.c. The general managers of Country Pride and Platte Cooperative told Hoy that she was not being hired by Country Pride, but rather would remain employed with Platte Cooperative through December 31, 2007. Under these circumstances, this Court cannot take the excerpt of Hoy's deposition—testimony in part based on what she was told—to foreclose her from a claim that it was Country Pride that employed her from October 1 through December 31, 2007. At a minimum, there is a genuine question of fact regarding that issue, given that Platte Cooperative appeared to be merged into Country Pride as of October 1, 2007, and thereafter ceased to exist.

Under federal law, to qualify for protection under the ADA, a plaintiff must be an "employee" under 42 U.S.C. § 12111(4). An "employee" is tautologically defined as an

12

individual employed by an employer. Id. The Supreme Court of the United States has considered two different methods to determine employee status under the ADA—the payroll method, Walters v. Metro. Educ. Enter., Inc., 519 U.S. 202, 206-07 (1997); and the common law definition of the master-servant relationship, Clackamas Gastroenterology Assoc., P.C. v. Wells, 538 U.S. 440, 448 (2003). Under the payroll approach, Hoy might be considered an employee of Platte Cooperative, because she never was on the payroll for Country Pride, although post-merger Country Pride controlled the account of Platte Cooperative. See Doc. 17-19 at ¶ 1.f. Under the common law definition of the master-servant relationship, the test primarily is one of control of the employee. Here, it is unclear who had control over Hoy's employment from October 1, 2007 to December 31, 2007. Hoy remained working at the Platte location of Country Pride where there was a manager and an assistant manager both employed by Country Pride at the time. Although Country Pride disclaims authority over Hoy during that time frame, Country Pride under the Unification Agreement actually was the entity obligated to provide all personnel necessary to complete the winding up of Platte Cooperative's business.[5] Doc. 27 at p. 6; Doc. 17-19 at ¶ 14.c. According to Hoy, she assisted Country Pride customers, transferred records of Platte Cooperative to the Country Pride system, followed directives of Country Pride on paying herself, and used a checking account of Platte Cooperative that was under the actual control of Country Pride. Doc. 24 at ¶¶ 47-48. Under these circumstances, particularly with fact questions

---

[5] The Unification Agreement, at paragraph 14.c. stated: "Country Pride will pay for and provide Platte [Cooperative] with all necessary equipment, personnel, and assistance necessary to complete the liquidation and winding up of the affairs of Platte [Cooperative] which Country Pride may charge against [Platte Cooperative] equities on the books of Country Pride." Doc. 17-19 at ¶ 14.c.

13

existing about whether Platte Cooperative remained a separate legal entity after the merger, summary judgment is not appropriate to grant.

## C. Claim for Lack of Accommodation

Hoy's Complaint contains a single cause of action for violation of the ADA. Doc. 1. Some of the allegations in her Complaint, and indeed portions of the Statement of Material Facts from both parties, refer to Hoy's requests for accommodations to Platte Cooperative pre-dating its merger with Country Pride. Hoy admits that she made no claim concerning any lack of accommodations in her charge of discrimination before the EEOC, nor did she suffer any damages as a consequence of the lack of accommodations from Platte Cooperative. Doc. 16 at ¶¶ 98-101; Doc. 24 at ¶¶ 98-101.

A person making a claim under the ADA must exhaust administrative remedies before bringing suit in federal court. Cottrill v. MFA, Inc., 443 F.3d 629, 634 (8th Cir. 2006); Ross v. Advance Am. Cash Advance Ctrs., Inc., 605 F. Supp. 2d 1025, 1031 (E.D. Ark. 2009); 42 U.S.C. § 2000e-5(e). To do so, a claimant is to file an administrative charge with the EEOC that is sufficiently precise to identify the parties and to describe generally the action or practices complained about. Cottrill, 443 F.3d at 634; Nichols v. Am. Nat'l Ins. Co., 154 F.3d 875, 886 (8th Cir. 1998); see also 29 C.F.R. § 1601.12(b). The court should "liberally construe an administrative charge" when it considers whether there has been an exhaustion of remedies. Cottrill, 443 F.3d at 635. Yet, the charge must be sufficient "to give the employer notice of the subject matter of the charge and identify generally the basis for a claim." Humphries v. Pulaski Cnty. Special Sch. Dist., 580 F.3d 688, 697 (8th Cir. 2009).

14

Hoy has admitted that her charge of discrimination filed with the EEOC did not contain any claim of a lack of accommodation. Doc. 16 at ¶¶ 98-101; Doc. 24 at ¶¶ 98-101. Hoy cannot now make such a claim in this lawsuit against Platte Cooperative or its alleged successor in interest—Country Pride.

**D. Successor Liability Issue**

Country Pride argues that it does not bear any successor liability for actions of Platte Cooperative. Because there is no viable claim in this case concerning the lack of accommodations provided by Platte Cooperative and because there is a genuine issue of material fact as to whether Country Pride was the actual employer of Hoy after October 1, 2007, the issue of alleged lack of successor liability as a grounds for summary judgment becomes somewhat moot. However, because that issue may affect whether Hoy has any claim related to conduct attributable to Platte Cooperative, this Court will address the issue.

The question of successor liability, within the Eighth Circuit, is considered using nine factors set forth in EEOC v. MacMillan Bloedel Container, 503 F.2d 1086, 1094 (6th Cir. 1974). See Prince v. Kids Ark Learning Ctr., LLC, 622 F.3d 992, 995 (8th Cir. 2010) (adopting and applying the MacMillan factors). The MacMillan factors are:

 (1) whether the successor company had notice of the charge;
 (2) the ability of the predecessor to provide relief;
 (3) whether there has been a substantial continuation of business operations;
 (4) whether the new employer uses the same plant;
 (5) whether the new employer uses the same or substantially the same work force;
 (6) whether the new employer uses the same or substantially the same supervisory personnel;
 (7) whether the same jobs exist under substantially the same working conditions.

> (8)     whether the new employer uses the same machinery, equipment,
>           and methods of production; and
> (9)     whether the new employer produces the same product.

MacMillan Bloedel Container, 503 F.2d at 1094.  The Eighth Circuit considers these factors, but

the "ultimate inquiry always remains whether the imposition of the particular legal obligation at

issue would be equitable and in keeping with federal policy."  Kids Ark, 622 F.3d at 995

(citations omitted).

        The analysis under the MacMillan factors results in a mixed picture.  Country Pride had

some notice that Hoy and Platte Cooperative had been at odds concerning Hoy's job performance

and accommodations of her disabilities.  Platte Cooperative, notwithstanding its financial stress,

had the ability to provide accommodations to Hoy.  Country Pride has substantially continued

the business operations of Platte Cooperative, using the same plant, the same workforce except

arguably for Hoy, and some of the same machinery and equipment and methods.  However,

Country Pride uses different supervisory personnel, manages the business differently, and does

not presently employ a secretary/bookkeeper in Platte, but rather a clerk with somewhat different

responsibilities.  Country Pride has the same sort of business as Platte Cooperative did.  In short,

the MacMillan factors do not provide a clear answer to whether successor liability ought to

extend to Country Pride for conduct of Platte Cooperative.

        Country Pride points to the Kids Ark case as being analogous.  In Kids Ark, a mother

faced closure of a daycare business due to, among other things, licensure problems.  Kids Ark,

622 F.3d at 993.  A daughter, at the mother's urging, sought a new daycare license, leased the

building and assets from her mother, hired her mother's five employees and an office manager,

and started operation of a daycare in the same location serving the same customer base.  The

16

Eighth Circuit, after noting that application of the MacMillan factors produced mixed results, chose not to impose successor liability because the mother's operation could not stay in business and the new management and new financing demonstrated an absence of connection between the formation of the daughter's business and the claim of discrimination that the mother was facing for one of her employees.

Unlike this case, Kids Ark involved a start-up business. The transaction between Country Pride and Platte Cooperative, however, was a merger. Albeit, this was not a merger of equals: Platte Cooperative faced financial stress and appears to have ceased to exist following the merger. However, the Unification Agreement was not an asset purchase or similarly structured transaction where Country Pride was expressly not acquiring liabilities of Platte Cooperative. Under South Dakota law, when two cooperatives merge, the surviving cooperative "possesses all the rights and all the property of each of the individual cooperatives, and is responsible for all their obligations." SDCL § 47-18-4. Under the circumstances, Country Pride is not entitled to summary judgment based on an argument of having no successor liability.

**E. ADA Claim Against Country Pride for Termination of Employment**

A plaintiff alleging discrimination based on a disability under the ADA must establish a prima facia case by having evidence of the following three elements: (1) the plaintiff has a disability within the meaning of the ADA; (2) the plaintiff is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) the plaintiff suffered an adverse employment action due to a disability. Chalfant v. Titon Distrib., Inc., 475 F.3d 982, 988 (8th Cir. 2007); Wenzel v. Missouri-Am. Water Co., 404 F.3d 1038, 1040 (8th Cir. 2005). There is no question in this case that Hoy has a disability within the meaning of the ADA.

17

Country Pride seeks summary judgment because it believes that the two other elements—that Hoy was qualified to perform the essential functions of the job, with or without reasonable accommodations, and that Hoy suffered an adverse employment action due to her disability—are not satisfied.

The ADA protection extends only to "a qualified individual with a disability." Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1111 (8th Cir. 1995) (citing 42 U.S.C. § 12112(a)). This in turn involves a two-part analysis: "(1) whether the individual meets the necessary prerequisites for the job, such as education, experience, training and the like; and (2) whether the individual can perform the essential job functions, with or without reasonable accommodation." Benson, 62 F.3d at 1111-12; 42 U.S.C. § 12114(8). Country Pride does not dispute the first prong of this test, but maintains that, as a matter of law, Hoy could not perform the essential job functions, with or without reasonable accommodation.

An essential job function "means the fundamental job duties of the employment position the individual with a disability holds or desires" and does not include the marginal functions of the position. 29 C.F.R. § 1630.2(n)(1); Moritz v. Frontier Airlines, Inc., 147 F.3d 784, 787 (8th Cir. 1998). In looking at essential job functions, factors include the employer's judgment as to what functions are essential, written job descriptions prepared before advertising or interviewing applicants for the job, the amount of time spent on the job performing each function, consequences of not performing the function, and the current work experience of those doing similar jobs. Moritz, 147 F. 3d at 787; 29 C.F.R. § 1630.2(n)(3). It is not for a court to "second-guess the business decisions of employers." Dorsey v. Pinnacle Automation Co., 278 F.3d 830, 837 (8th Cir. 2002).

Taking the facts in the light most favorable to Hoy as the party opposing summary judgment, Hoy was able to perform the essential job functions, with or without reasonable accommodations, of her job as a bookkeeper/secretary for Platte Cooperative. However, as Hoy acknowledges, Platte Cooperative apparently came to an end effective October 1, 2007, thereby ending that position.

Hoy was then hired—whether by Platte Cooperative or Country Pride is a genuine dispute of material fact on this record—to assist in winding down Platte Cooperative business and to provide assistance to Country Pride in transferring information to Country Pride's computer system, answering phones, and providing some services to customers who came to the Platte location of Country Pride between October 1, 2007 and December 31, 2007. Hoy was able to perform the essential functions of that job, with or without reasonable accommodation. Hoy lost that job on December 31, 2007, which constitutes an adverse employment action. Any claim Hoy has for violation of the ADA through termination of her position survives summary judgment.

As it relates to any claim for not being hired for the subsequent position of clerk, Hoy admits that she did not meet the job duties as listed in the job description written by Country Pride. However, there exists a substantial question of fact over whether Country Pride wrote the job description intentionally to exclude Hoy. The clerk's job description—which included a 70-pound weight lifting requirement, the need to drive a feed truck and forklift, and assisting in tire repair—were ones that Country Pride itself did not apply in its choice of whom to hire as a clerk in Platte. Some of the other job functions—enter tickets, wait on customers, and reconcile daily bank statements—were ones within the realm of what Hoy could do with reasonable

19

accommodation and had in fact been doing. The remaining description of the job—cleaning and stocking shelves—are ones that Hoy probably could not perform, even with accommodations.

This Court is mindful that "an employer is not required to create a new position as an accommodation" under the ADA. Cravens v. Blue Cross and Blue Shield of Kansas, 214 F.3d 1011, 1019 (8th Cir. 2000); Fjellestad v. Pizza Hut of America, Inc., 188 F.3d 944, 950 (8th Cir. 1999). Thus, there is nothing inherently inappropriate about Country Pride expecting that a clerk be able to clean and do inventory. The question becomes whether those items were "essential job functions" for the clerk and the amount of time that those functions would require. Given the questions surrounding whether the job description was written intentionally to exclude Hoy with arguably bogus requirements for lifting, tire repair, and operating machinery, and given the obligation of the Court to view the facts in the light most favorable to the non-movant in ruling on a summary judgment motion, there exists a genuine question of material fact over whether cleaning and doing inventory were essential job functions of the clerk.

Country Pride points to Hoy's application for SSDI benefits in October of 2007 as evidence that she could not perform the essential functions of such a job. Indeed, Hoy's physician deemed her one-hundred percent disabled, the Social Security Administration found her to be disabled in November of 2007, and Hoy herself considered herself to be disabled as of December 31, 2007. Doc. 16 at ¶¶ 68-71; Doc. 24 at ¶¶ 68-71. An ADA plaintiff like Hoy who claims disability for purposes of a SSDI claim must proffer a sufficient explanation for the apparent contradiction to have her ADA claim survive summary judgment. Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806-07 (1997).

20

Hoy proffers the explanation that her employer urged her to apply for SSDI benefits and that she always believed herself able to work with accommodations, as she had done for the previous approximately 33 years. Hoy notes that she had applied to Country Pride for a position in "secretary/bookkeeping" shortly before she sought SSDI benefits. Under the totality of the circumstances and viewing the facts in the light most favorable to the Plaintiff, this Court believes it a jury issue to determine whether Hoy's explanation is credible and sufficient to overcome the apparent contradiction arising out of her SSDI claim to be totally disabled with her ADA claim that she could perform essential job functions with "reasonable accommodation." See Cleveland, 526 U.S. at 806.

Country Pride also claims that Hoy suffered no adverse employment action with respect to not receiving the clerk's job because she did not apply for the job. Hoy explains that she was unaware that there had been posting of such a position. Hoy had applied for a bookkeeper/secretary position shortly before the merger and made known her interest in continuing to work at the Platte location of Country Pride.

The Eighth Circuit has stated that "an employee who does not formally apply must make 'every reasonable attempt to convey his [or her] interest in the job to the employer' before he or she may prevail on a discrimination claim." Lockridge v. Bd. of Tr., 315 F.3d 1005, 1011 (8th Cir. 2003) (internal cites omitted) (quoting EEOC v. Metal Service Co., 892 F.2d 341, 348 (3rd Cir. 1990)). Hoy applied to Country Pride for a job as bookkeeper/secretary in the Fall of 2007, but not for the clerk position in 2008 or at any time thereafter when the position has opened. Hoy's testimony indicates that she has applied for no jobs at all since applying for SSDI benefits. Hoy's ADA claim regarding not being hired for the clerk position—especially in the wake of her

21

SSDI claim and testimony—appears to be thin and possibly susceptible to judgment as a matter

of law at trial. However, there remain questions about the arguably bogus job description written

for the clerk position and what the "essential job functions" of the clerk position truly was and

is. Those fact questions drive this Court not to grant summary judgment on that portion of Hoy's

ADA claim.

## III. Conclusion

For the reasons explained herein, it is hereby

ORDERED that Defendant's Motion for Summary Judgment (Doc. 14) is granted in part

as to any claim of lack of accommodation and is otherwise denied.

Dated March **30**, 2012.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE

22